## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| TIPPMANN CONSTRUCTION, INC., | § | |
| by and through its assignee and subrogee | § | |
| SELECTIVE INSURANCE | § | |
| COMPANY OF SOUTH CAROLINA | § | |
| | § | |
|     Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| vs. | § | 4:11-CV-591-Y |
| | § | |
| PROFESSIONAL SERVICE | § | |
| INDUSTRIES, INC. | § | |
| | § | |
|     Defendant. | § | |

## BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT PROFESSIONAL SERVICE INDUSTRIES, INC'S SECOND AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT

Respectfully submitted,

By: s/Dale E. Butler
Dale E. Butler, TX Bar No. 00792388
**Winstead PC**
777 Main Street, Suite 1100
Fort Worth, Texas  76102
(817) 420-8200 (Telephone)
(817) 420-8201 (Facsimile)
dbutler@winstead.com

Kristen L. Sherwin, TX Bar No. 24043918
**Winstead PC**
1201 Elm Street, Suite 5400
Dallas, Texas 75270-2199
(214) 745-5400  (Telephone)
(214) 745-5390  (Facsimile)
ksherwin@winstead.com

**ATTORNEYS FOR PLAINTIFF TIPPMANN CONSTRUCTION COMPANY by and through its assignee and subrogee SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA**

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2012, I electronically filed the foregoing document with the Clerk of the court for the Northern District of Texas, Ft. Worth Division, by using the CM/ECF system which will send notification of such filing to all CM/ECF participants and counsel of record.

s/Dale E. Butler
One of Counsel

## TABLE OF CONTENTS

I.      SUMMARY OF RESPONSE ..........................................................................1

II.     IDENTIFICATION OF LIVE PLEADINGS ...........................................1

III.    OBJECTIONS TO PSI'S SUMMARY JUDGMENT EVIDENCE ...........1

        A.  STANDARD OF REVIEW ...................................................................1

        B.  PSI'S SUMMARY JUDGMENT EVIDENCE IS INADMISSIBLE..................2

            1. Tippmann objects to the Affidavit of Garrett Smith because it contains
               conclusory testimony and he fails to establish that he has personal knowledge
               of certain facts in the Affidavit. ..............................................................2

            2. Tippmann objects to Exhibits A-1, A-2, and A-3 to the Garrett Smith
               Affidavit as hearsay. ...........................................................................3

            3. Tippmann objects to Exhibit A-3 to the Affidavit of Garrett Smith
               because the document has not been properly authenticated. ...........................5

            4. Tippmann further objects to PSI's use of Exhibit A-3 to the Affidavit
               of Garrett Smith because the document was not part of PSI's initial disclosures
               and should be excluded. ........................................................................6

IV.     EVIDENCE SUPPORTING PLAINTIFF'S SUMMARY JUDGMENT
        RESPONSE .......................................................................................7

V.      FACTS ESTABLISHED BY PLAINTIFF'S SUMMARY JUDGMENT
        RESPONSE EVIDENCE ......................................................................8

VI.     SUMMARY JUDGMENT STANDARD ................................................10

VII.    ARGUMENTS AND AUTHORITIES ..................................................12

        A.  PSI'S SUMMARY JUDGMENT MOTION SHOULD BE DENIED BECAUSE IT IS NOT
            SUPPORTED BY ADMISSIBLE EVIDENCE. ...........................................12

        B.  WITHOUT EVEN ADDRESSING THE VARIOUS GENUINE ISSUES OF MATERIAL FACT
            THAT PRECLUDE GRANTING PSI'S SUMMARY JUDGMENT MOTION, THE MOTION
            SHOULD BE DENIED BECAUSE THE LIMITATION OF LIABILITY CLAUSE THAT PSII
            RELIES ON IS UNENFORCEABLE AS A MATTER OF LAW BECAUSE IT IS NOT
            CONSPICUOUS. ...............................................................................12

C. IF THE COURT OVERRULES PLAINTIFF'S OBJECTIONS TO PSI'S SUMMARY JUDGMENT EVIDENCE AND DETERMINES THE LIMITATION OF LIABILITY CLAUSE IS CONSPICUOUS, THEN GENUINE ISSUES OF MATERIAL FACT EXIST THAT DEFEAT PSI'S MOTION. ...................................................................................................16

1. The Purchase Orders and Subcontract Agreement issued by Tippmann raise a fact issue regarding whether the terms of the PSI Proposals were part of the parties' contract. ...................................................................................16

2. Even if the First and Second PSI Proposals constitute contracts, under the merger doctrine the terms of those proposals were merged into the PSI Subcontract Agreement and Purchase Orders. .............................................17

3. Issues of fact surrounding the December Proposal require that PSI's Motion be denied. ...................................................................................19

D. EVEN IF THE COURT DETERMINES THAT THE LIMITATION OF LIABILITY PROVISION IN PSI'S PROPOSALS IS ENFORCEABLE, THERE IS A FACT ISSUE RELATED TO THE AMOUNT OF PSI'S LIABILITY UNDER THE PROVISION. ....................................20

VIII. PRAYER ..................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*24/7 Records, Inc. v. Sony Music Entertainment, Inc.*,
566 F. Supp. 2d 305 (S.D.N.Y. 2008) ....................................................................7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...........................................................................................11

*Brainard v. Am. Skandia Life Assur. Corp.*,
432 F.3d 655 (6th Cir. 2005) ...............................................................................7

*Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P.*,
614 F. Supp. 2d 481 (S.D.N.Y. 2009) ..................................................................3

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......................................................................................11, 12

*Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.*,
534 F. Supp. 2d 616 (D. Md. 2008)......................................................................7

*Cormier v. Pennzoil*,
969 F.2d 1159 (5th Cir. 1992) .............................................................................2

*Ebewo v. Martinez*,
390 F. Supp. 2d 600 (S.D.N.Y. 2004) ..................................................................7

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542 (9th Cir. 1990) .............................................................................2

*Heidtman v. County of El Paso*,
171 F.3d 1038 (5th Cir. 1999) .............................................................................6

*Lemelle v. Universal Mfg. Corp.*,
18 F.3d 1268 (5th Cir. 1994) .............................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ...........................................................................................11

*Mitchell v. Toledo Hosp.*,
964 F.2d 577 (6th Cir. 1992) ...............................................................................2

*Nationwide Transp. Fin. v. Cass Info. Sys.*,
523 F.3d 1051 (9th Cir. 2008) .............................................................................7

*Pender v. United States,*
866 F. Supp. 1129 (N.D. Ill. 1994) ................................................................. 2

*Ruffin v. Shaw,*
149 F.3d 294 (4th Cir. 1998) ........................................................................... 2

*Salgado v. Gen. Motors Corp.,*
150 F.3d 735 (7th Cir. 1998) ........................................................................... 6

*Searles v. First Fortis Life Ins. Co.,*
98 F. Supp. 2d 456 (S.D.N.Y. 2000) ............................................................... 3

*Thorne v. Lelles,*
463 F. Supp. 2d 760 (S.D. Ohio 2006) ............................................................ 7

*Visser v. Packer Eng'g Assocs.,*
924 F.2d 665 (7th Cir. 1991) ........................................................................... 2

*Wyler v. U.S.,*
725 F.2d 156 (2d Cir. 1983) ............................................................................ 3

### STATE CASES

*Bergholtz v. Southwestern Bell Yellow Pages, Inc.,*
324 S.W.3d 195 (Tex. App.—El Paso 2010, no pet.) .................................... 12

*Carr v. Weiss,*
984 S.W.2d 753 (Tex. App.—Amarillo 1999, pet. denied) ...................... 17, 18

*Dresser Indus., Inc. v. Page Petroleum, Inc.,*
853 S.W.2d 505 (Tex. 1993) ..................................................................... 12, 13

*Fish v. Tandy Corp.,*
948 S.W.2d 886 (Tex. App.—Fort Worth 1997, writ denied) ....................... 17

*Green International, Inc v. Solis,*
951 S.W.2d 348 (Tex. 1997) .......................................................................... 12

*Littlefield v. Schaefer,*
955 S.W.2d 272 (Tex.1997) ........................................................................... 13

*Mickens v. Longhorn DFW Moving Inc.,*
264 S.W.3d 875 (Tex. App.—Dallas 2008, pet. denied) .......................... 15, 16

*Satre v. Dommert,*
184 S.W.3d 893 (Tex.App.—Beaumont 2006, no pet.) ................................. 17

*Sharyland Water Supply Corp. v. City of Alton,*
354 S.W.3d 407 (Tex. 2011) .......................................................................... 13

*Texas A & M Univ.-Kingsville v. Lawson,*
    127 S.W.3d 866 (Tex. App.—Austin 2004, pet. denied) ................................. 17, 18

### FEDERAL STATUTES

FED. R. CIV. P. 26(a)(1)(B) ................................................................................. 6

FED. R. CIV. P. 37(c) .......................................................................................... 6

FED. R. CIV. P. 37(c)(1) .................................................................................. 6, 7

FED. R. CIV. P. 56(c)(4) ..................................................................................... 2

FED. R. CIV. P. 56(e) ......................................................................................... 3

FED. R. EVID. 602 .............................................................................................. 2

FED. R. EVID. 801(c) .......................................................................................... 4

FED. R. EVID. 803(6)(A) .................................................................................... 4

FED. R. EVID. 803(6)(A)-(C), 902(11), (12) .................................................... 4

FED. R. EVID. 901 .............................................................................................. 5

Federal Rule of Civil Procedure 56(c) .......................................................... 1, 10

Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure ............................... 6

Rule 37 of the Federal Rules of Civil Procedure ............................................. 6

Rule 26 .............................................................................................................. 7

Rule 26(a) ......................................................................................................... 6

Rule 26(a)(1) ..................................................................................................... 7

Rule 26(e) ......................................................................................................... 7

Rule 37 .............................................................................................................. 6

# I.  SUMMARY OF RESPONSE

Defendant Professional Services Industries, Inc. ("PSI") filed a Second Amended Motion for Partial Summary Judgment (the "Motion") asking this Court to rule that, as a matter of law, a limitation of liability clause purportedly contained in proposals PSI presented to Tippmann Construction, Inc. ("Tippmann") for testing work related to the Kroger Cold Storage Project in Keller, Texas (the "Project") serves to cap any damages for PSI's defective work on the Project at an amount equal to $25,000.  PSI asks the Court to interpret the contractual relationship between the parties, but PSI provided the Court with an incomplete record of the contractual agreements between PSI and Tippmann.  In fact, PSI fails to present to the Court, or even address, the April 1, 2008 subcontract agreement (the "PSI Subcontract Agreement") entered into between PSI and Tippmann, which Tippmann intended to govern the relationship between the Parties on this Project.  PSI's Motion should be denied because in addition to the abundance of evidentiary issues and genuine issues of material fact that exist, PSI's limitation of liability clause is unenforceable because it is not conspicuous.

# II.  IDENTIFICATION OF LIVE PLEADINGS

Tippmann agrees with PSI's identification of the live pleadings in this matter.

# III.  OBJECTIONS TO PSI'S SUMMARY JUDGMENT EVIDENCE

## A.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) allows a party to move for or oppose summary judgment using affidavits, depositions, answers to interrogatories and certified copies of papers referred to in an affidavit.  Supporting affidavits must be made on personal knowledge and shall set forth such facts that would be admissible in evidence, and shall show affirmatively that the

affiant is competent to testify to the matters stated therein.[1]   Likewise, documents submitted to support or oppose summary judgment must be competent and admissible.[2]   Conclusory statements or indications of opinion or belief offered without any factual support are also insufficient summary judgment evidence.[3]

Tippmann asks that the Court strike or otherwise disregard the "evidence" submitted by PSI in its Motion because the identified statements and supporting documentation are incompetent and, therefore, inadmissible.   As set forth below, PSI's evidence is incompetent because it: (1) is not based upon personal knowledge; (2) is conclusory; (3) is hearsay; (4) cannot be properly authenticated; and (4) in part, is subject to automatic exclusion.

## B.   PSI'S SUMMARY JUDGMENT EVIDENCE IS INADMISSIBLE

### 1.   Tippmann objects to the Affidavit of Garrett Smith because it contains conclusory testimony and he fails to establish that he has personal knowledge of certain facts in the Affidavit.

Tippmann objects to the Affidavit of Garrett Smith on the grounds that it is not competent summary judgment evidence.   A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.[4]   As a general rule, an affiant is competent to testify when the testimony is grounded in observation or other personal experience.[5]   In the present case, the affiant has failed to demonstrate his personal knowledge of the facts set forth in paragraphs two, three, and four of the Affidavit.   Specifically, Smith has failed to establish how he has personal knowledge of the

---

[1] FED. R. CIV. P. 56(c)(4).
[2] See, e.g., Cormier v. Pennzoil, 969 F.2d 1159, 1561 (5th Cir. 1992) (On summary judgment the court may not consider hearsay evidence from depositions or affidavits.); Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990) (It is well established that unauthenticated documents cannot be considered on a motion for summary judgment).
[3] Pender v. United States, 866 F. Supp. 1129, 1133 (N.D. Ill. 1994); Mitchell v. Toledo Hosp., 964 F.2d 577, 585 (6th Cir. 1992).
[4] FED. R. EVID. 602.
[5] Visser v. Packer Eng'g Assocs., 924 F.2d 665, 659 (7th Cir. 1991); Ruffin v. Shaw, 149 F.3d 294, 302 (4th Cir. 1998).

fact that PSI and Tippmann allegedly entered into the agreements referenced in those paragraphs. Instead, Smith makes the conclusory statement that he has personal knowledge of the facts stated in his affidavit without demonstrating how that personal knowledge was obtained through his role as Corporate Counsel.

Mr. Smith's position as PSI's general counsel does not place him in a different position than PSI's outside counsel as far as being required to have personal knowledge of the testimony contained in his affidavit. Affidavits by attorneys attempting to authenticate documents with conclusory statements have been ruled inadmissible when the attorney fails to demonstrate his or her personal knowledge of the facts asserted.[6] An affidavit of the opposing party's attorney that does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight.[7] Even if admissible, a conclusory affidavit may present only a question of fact for a jury.[8]

Therefore, Smith's statements in paragraphs two, three, and four of the Affidavit are inadmissible because they lack a demonstration of personal knowledge by the affiant.[9]

## 2. Tippmann objects to Exhibits A-1, A-2, and A-3 to the Garrett Smith Affidavit as hearsay.

In Paragraph five of the Affidavit, Smith attempts to prove that the documents attached to the Affidavit as Exhibits A-1, A-2, and A-3 are business records of PSI. In order to introduce a business record in an affidavit, the party seeking to introduce the evidence (i.e. PSI) must prepare the affidavit to be signed by the custodian of the records or another qualified person who can certify that the record (1) was made at or near the time of the act, by or from information

---

[6] *See Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P.*, 614 F. Supp. 2d 481, 484 (S.D.N.Y. 2009) (proffered affidavit contained only a conclusory assertion that the copies accurately reflected letters received by the attorney's client, and did not establish a basis for the affiant's personal knowledge of the fact asserted).
[7] *Wyler v. U.S.*, 725 F.2d 156, 160 (2d Cir. 1983)
[8] *Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000) (test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge).
[9] *See* FED. R. CIV. P. 56(e).

transmitted by, someone with knowledge of the facts; (2) the record was kept in the course of regularly conducted activity of the business; and (3) the record was made as a part of the regular practice of that activity.[10]   In the present case, Smith has failed to demonstrate that he is a custodian of the records for PSI or that he is qualified as a person that can certify a business record for PSI.

Each of the documents in Exhibits A-1 and A-2 contain a Tippmann bates label.  Since Exhibits A-1 and A-2 came from Tippmann's own files, they do not qualify as business records of PSI.

Furthermore, Exhibits A-1, A-2, and A-3 each contain documents that were generated by Tippmann, not PSI.  Exhibits A-1 and A-2 contain a Tippmann issued Purchase Order, and Exhibit A-3 contains an acceptance page signed by a Tippmann employee.[11]   As such, the Tippmann records were not made by PSI, as alleged by Smith, nor were those documents transmitted by someone at PSI with knowledge of the records.[12]   Therefore, pages 5, 13, and 25 of PSI's Appendix are not business records of PSI and cannot be authenticated as such.

Since Exhibits A-1, A-2, and A-3 to the Garnett Smith Affidavit do not qualify as business records of PSI, Exhibits A-1, A-2, and A-3 are hearsay and are not admissible as competent summary judgment evidence.[13]   Therefore, Tippmann moves that Exhibits A-1, A-2, and A-3 to PSI's Motion be struck from the record or otherwise disregarded by the Court.

---

[10] FED. R. EVID. 803(6)(A)-(C), 902(11), (12).
[11] *See* PSI's App.  5, 13 and 24.
[12] *See* FED. R. EVID. 803(6)(A).
[13] *See* FED. R. EVID. 801(c).

**3.     Tippmann objects to Exhibit A-3 to the Affidavit of Garrett Smith because the document has not been properly authenticated.**

In addition to the previous objections to Exhibit A-3, Tippman also objects to Exhibit A-3 because it is has not been properly authenticated.[14]   On its face, Exhibit A-3 appears to be a compilation of three separate documents and not a full copy of PSI's alleged proposal. Specifically, the first six pages of Exhibit A-3 have a document header that includes a proposal number and state "Page # of 9".[15]   No facsimile legend appears on the first six pages of the document.[16]   Page seven of Exhibit A-3 contains a header similar to the first six pages that identifies the document as "Page 7 of 9" but this page also contains a facsimile legend.[17]   The final page of Exhibit A-3 is a copy of PSI's General Conditions, upon which PSI bases its summary judgment motion.[18]   This final page does not contain any type of header identifying it as being part of PSI's December 2008 proposal nor does it contain a facsimile legend.   On its face, there is no language suggesting that it belongs with the first seven pages of Exhibit A-3. Consequently, PSI has no evidence or testimony to support its position that the General Conditions contained in Exhibit A-3 were actually part of the December 2008 proposal or were ever sent to Tippmann.   Further, since the signature page is page "7 of 9", then the document header indicates that the eighth and ninth pages of Exhibit A-3 are missing.   There is no explanation for why pages are missing or why the signature page on page seven has a facsimile legend but the other pages do not.   Accordingly, PSI has failed to properly authenticate Exhibit A-3 of the Affidavit of Garrett Smith.

---

[14]FED. R. EVID. 901.
[15]PSI's App. 18-23;  Halberstadt Aff. ¶ 6 and Ex. 1 at App. 002, 20-25;  Budzon  Aff. ¶ 7 at App. 049; Holaday Aff. ¶ 4 and Ex.1 at App. 065, 69-74.
[16] PSI's App. 18-23;  Halberstadt Aff. ¶ 6 and Ex. 1 at App. 002, 20-25;  Budzon  Aff. ¶ 7 at App. 049; Holaday Aff. ¶ 4 and Ex.1 at App. 065, 69-74.
[17] PSI's App. 24; Holaday Aff. ¶ 4 at App. 065.
[18] PSI's App. 25.

Since its appears on its face that Exhibit A-3 is not the complete Proposal, and there is no competent summary judgment evidence that sets forth the exact document allegedly sent to Tippmann, Tippmann moves that Exhibit A-3 be struck from the record or otherwise disregarded by the Court. In any event, even if admissible, Exhibit A-3 would create a genuine issue of fact due to the reliability issues outlined above.

4. **Tippmann further objects to PSI's use of Exhibit A-3 to the Affidavit of Garrett Smith because the document was not part of PSI's initial disclosures and should be excluded.**

Without waiving the previous objections to Exhibit A-3, the documents contained in Exhibit A-3 to Smith's Affidavit were not produced as part of PSI's Rule 26(a) disclosures; thus, the documents should be excluded from PSI's summary judgment evidence. Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure requires a party to provide a copy of all documents in its possession which the disclosing party may use in support of its claim or defenses, unless solely for impeachment.[19] Rule 37 of the Federal Rules of Civil Procedure states that a party failing to provide disclosures required under Rule 26(a) is not allowed to use that information or to supply evidence in a motion, at a hearing or at trial relating to the undisclosed evidence, unless such failure was harmless.[20] The burden is on the sanctioned party to prove that the violation is harmless.[21] PSI asserts that the document in question is contract between the parties that serves to limit PSI's liability. Therefore, PSI cannot demonstrate that disclosing such a document for the first time in a dispositive motion is "harmless" to Tippmann.

The Rule 37 exclusion of the evidence is an automatic sanction that is self-executing.[22] Courts have held that this automatic exclusionary rule applies to motions for summary

---

[19] FED. R. CIV. P. 26(a)(1)(B).
[20] FED. R. CIV. P. 37(c)(1).
[21] *Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999).
[22] FED. R. CIV. P. 37(c), Adv. Com. Notes (1993); *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998).

judgment.[23]  Consequently, courts routinely impose this automatic exclusionary rule to preclude a party from offering previously undisclosed evidence either at trial or in summary judgment proceedings.[24]  Therefore, Tippmann requests that the Court exclude Exhibit A-3 from evidence due to PSI's failure to disclose the document in its Rule 26 disclosures.

## IV.  EVIDENCE SUPPORTING PLAINTIFF'S SUMMARY JUDGMENT RESPONSE

Plaintiff relies on the following evidence set forth in Plaintiff's Appendix:

A.    Affidavit of Bryan Halberstadt ("Halberstadt Aff.") and its Exhibits:

Exhibit 1:    Exhibits A-1 through Exhibit A-3 from PSI's Appendix

Exhibit 2:    Tippmann's form Subcontract Agreement from 2008

Exhibit 3:    Executed pages of PSI Subcontract Agreement received from PSI

Exhibit 4:    E-mail exchange between Kent Rice and Andy Whitmore, forwarding PSI's Subcontract Agreement pages returned by PSI

Exhibit 5:    Tippmann Purchase Orders identified as KROGERTX-047 and KROGERTX-047A

B.    Affidavit of Dale Budzon ("Budzon Aff.") and its Exhibits:

Exhibit 1:    PSI Subcontract Agreement dated April 1, 2008

Exhibit 2:    Tippmann Purchase Orders identified as KROGERTX-047 and KROGERTX-047A

C.    Affidavit of Matt Holaday ("Holaday Aff.") and its Exhibit:

Exhibit 1:    Exhibit A-3 from PSI's Appendix

D.    Affidavit of Matt Willson ("Willson Aff.") and its Exhibit:

Exhibit 1:    Exhibit A-3 from PSI's Appendix

---

[23] *Thorne v. Lelles*, 463 F. Supp. 2d 760, 770 (S.D. Ohio 2006); *Ebewo v. Martinez*, 390 F. Supp. 2d 600 (S.D.N.Y. 2004).

[24] *See Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1056 (9th Cir. 2008) (upholding district court's exclusion of expert testimony on issue not contained within expert report); *24/7 Records, Inc. v. Sony Music Entertainment, Inc.*, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008) (excluding damages theories for failure to disclose under Rule 26(a)(1) and granting summary judgment to defendant because plaintiff was unable to prove damages); *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005) (excluding expert affidavit because it included an additional opinion not in expert report, which was not timely supplemented under Rule 26(e)); *Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.*, 534 F. Supp. 2d 616, 622 (D. Md. 2008) ("Rule 37(c)(1) could prevent a non-moving party in a summary judgment proceeding from offering evidence to support its claims when that party has previously failed to meet its disclosure and duty to supplement requirements.").

## V.    FACTS ESTABLISHED BY PLAINTIFF'S SUMMARY JUDGMENT RESPONSE EVIDENCE

Contrary to the assertions contained in PSI's Motion, several fact issues exist that preclude summary judgment. Those fact issues are evident upon a review of the relevant facts, which are as follows:

1.    Tippmann was the general contractor for the Project.[25]  Tippmann's work on the Project consisted of two phases: (i) renovation of an existing cold storage structure; and (ii) new construction to expand the Owner's facilities.[26]

2.    Tippmann retained PSI as its subcontractor to perform certain testing services at the Project.[27]  PSI's first proposal for work on the Project was dated January 23, 2008 (the "First Proposal") and Tippmann's Project Manager signed the First Proposal on March 26, 2008.[28]

3.    After Tippmann approved the First Proposal, Tippmann requested that PSI perform additional services on the Project.[29]  Thereafter, PSI issued a second proposal for services dated March 28, 2008 (the "Second Proposal") for the additional work.[30]

4.    Tippmann's corporate policy and practice is to issue a purchase order agreement and subcontract agreement to a subcontractor in situations where a proposed subcontractor issues a proposal for its services.[31]  This is true even if a Tippmann representative has signed a subcontractor's or vendor's proposal.[32]

---

[25] Budzon Aff. ¶ 2 at App. 047.
[26] Budzon Aff. ¶ 4 at App. 048.
[27] Holaday ¶ 3 at App. 065; Willson Aff. ¶ 3 at App. 078.
[28] Willson Aff. ¶ 3 at App. 078; *see also* PSI's App. 6-11.
[29] Willson Aff. ¶ 4 at  App. 078.
[30] Willson Aff. ¶ 4 at App. 078;  PSI's App. 14-16.
[31] Halberstadt Aff. ¶ 8 at 003; Budzon Aff. ¶ 3 at App. 048; Holaday ¶ 6 at 065.
[32] Budzon Aff. ¶ 3 at App. 048.

5.      Tippmann's form purchase order agreement incorporates the terms of the Tippmann subcontract agreement.[33]  Tippmann intends for its purchase order agreement and subcontract agreement to govern the relationship between Tippmann and the subcontractor.[34]  When a subcontract agreement is entered into with a subcontractor, Tippmann intends for the subcontract agreement to govern all changes to a subcontractor's scope of work regardless of whether the change is reflected in a change order or purchase order.[35]

6.      In accordance with its corporate policy and practice, on April 2, 2008, Tippmann sent PSI the PSI Subcontract Agreement and two purchase order agreements, identified as KROGERTX-047 dated March 27, 2008 (the "First Purchase Order") and KROGERTX-047A dated April 2, 2008 (the "Second Purchase Order") (collectively the "Purchase Orders").[36]  The Purchase Orders incorporated the terms of the PSI Subcontract Agreement.[37]  Consistent with Tippmann's policy, Tippmann intended the Purchase Orders and PSI Subcontract Agreement to govern the relationship between Tippmann and PSI.[38]

7.      PSI signed the PSI Subcontract Agreement and returned it to Tippmann.[39]

8.      In late 2008, Tippmann again requested that PSI perform additional testing services related to the frozen soil encountered on the renovation portion of the Project.[40]  Tippmann intended for any additional services performed by PSI to be governed by the terms and conditions of the PSI Subcontract Agreement.[41]

---

[33] Halberstadt Aff. Ex. 5 at App. 045-046.
[34] Halberstadt  Aff. ¶ 8 at App. 003; Budzon Aff. ¶ 3 at App. 048;  Willson Aff. ¶ 3at App. 078.
[35] Halberstadt Aff. ¶ 8 at App. 003; Budzon Aff. ¶ 3 at App. 048.
[36] Halberstadt Aff. ¶¶ 8 & 9 and Exs. 2 & 5 at App. 003-004, 029-036, 045-046; Budzon Aff. ¶¶ 5 & 6 and Exs. 1 & 2 at App. 048-04, 050-063; Willson Aff. ¶¶ 3 & 4 at App. 078.
[37] Halberstadt ¶ 9 and Ex. 5 at App. 003-004, 062-063; Budzon Aff. ¶ 5 and Ex. 2 at App. 048-049, 062-063.
[38] Halberstadt ¶¶ 8 & 9 and Exs. 2 & 5 at App. 003-004, 029-036, 045-046; Budzon Aff. ¶ 3 and Exs. 1 & 2 at App. 048, 50-63; Willson Aff. ¶¶ 3 & 4 at App. 078.
[39] Halberstadt Aff. ¶ 9 and Ex. 2 at App. 003-004, 029-036; Budzon Aff. ¶ 3 and Ex. 1 at App. 048, 050-060.
[40] Willson Aff. ¶ 5 at App. 078.
[41] Holaday Aff. ¶ 4 at App. 065; Willson Aff. ¶ 5 at App. 078.

9.     Although, PSI alleges in its Summary Judgment Brief that it provided a proposal dated December 28, 2008 to Tippmann for the performance of these additional services (the "December Proposal"),[42] Tippmann has no record of receiving pages 1-6 or 8-9 of the December Proposal.[43]   Even though on its face the December Proposal purports to be a nine (9) page document, PSI has only provided the first seven (7) pages containing the header with the page numbering.[44]   Page 7 of the December Proposal was signed by Tippmann's Assistant Project Manager, Matt Holaday, but he does not recall ever receiving or reviewing pages 1-6 or pages 8-9 of the alleged December Proposal.[45]   Further, Mr. Holaday does not recall ever receiving, reviewing, or being aware of the existence of the general conditions that PSI included with the December Proposal in its summary judgment evidence.[46]   When he signed page 7 of the alleged December Proposal, Mr. Holaday did not intend to modify any provisions in the PSI Subcontract Agreement.[47]

10.     Tippmann's Project files do not contain a copy of the December Proposal.[48]  Likewise, Tippmann's Purchase Orders issued to PSI for the Project do not include a purchase order related to the December Proposal.[49]

## VI.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the record indicates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[50]   A party seeking summary judgment bears the initial burden of identifying portions of pleadings and

---

[42] *See* PSI's Brief at pg. 3; PSI's App. 18-25.
[43] Halberstadt Aff. ¶¶ 7 & 10 at App 003-004; Budzon Aff. ¶ 7 at App. 049; Holaday Aff. ¶¶ 4, 5, & 7 at App.065-066.
[44] PSI App. 18-24; *see also* Holaday Aff. ¶ 5 at App. 065.
[45] Holaday Aff. ¶ ¶ 4 & 5 at App. 065.
[46] Holaday Aff. ¶¶ 4 & 5 at App. 065.
[47] Holaday Aff. ¶¶ 4 & 5 at App. 065.
[48] Halberstadt Aff. ¶¶ 7 & 10 at App. 003; Budzon Aff. ¶ 7 at App. 049; Holaday Aff. ¶ 7 at App. 066.
[49] Halberstadt Aff. ¶ 9 and Ex. 2 at App. 003-004, 029-036; Budzon Aff. ¶ 3 and Ex. 1 at App. 048, 050-060.
[50] FED. R. CIV. P. 56 (c).

SUMMARY JUDGMENT

discovery on file, together with any affidavits, that it believes demonstrates the absence of a genuine issue of material fact.[51]  Once the movant does so, the burden shifts to the non-movant to show that summary judgment should not be granted.[52]  All inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.[53]  The court must decide all reasonable doubts and inferences in the light most favorable to the opposing party.[54]  The heart of the court's inquiry is whether reasonable minds could differ on the evidence, or as the Supreme Court summarized: "[the question is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[55]

In the present case, PSI fails to provide any competent summary judgment evidence, much less demonstrate that the summary judgment evidence is one-sided in PSI's favor.  Instead, the summary judgment evidence indicates that even if the PSI Proposals are part of the parties' contractual relationship, the limitation of liability provision is not enforceable as a matter of law because it is not conspicuous.  Alternatively, if the provision is conspicuous, when all reasonable doubts and inferences from the summary judgment evidence are resolved in Tippmann's favor, then fact issues exist and PSI's Motion should be denied.

---

[51] *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).
[52] *Id.* at 324-25.
[53] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).
[54] *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir. 1994).
[55] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

# VII.   ARGUMENTS AND AUTHORITIES

A.    PSI's Summary Judgment Motion Should Be Denied Because It Is Not Supported By Admissible Evidence.

PSI bears the burden of presenting admissible evidence that demonstrates PSI is entitled to summary judgment in this case.[56]  Since PSI failed to present admissible evidence, PSI has failed to carry its burden and its Motion should be denied.

B.    Without even addressing the various genuine issues of material fact that preclude granting PSI's summary judgment motion, the Motion should be denied because the Limitation of Liability Clause that psi relies on is unenforceable as a matter of law because it is not conspicuous.

PSI argues that limitation of liability clauses do not need to be conspicuous as a matter of law by citing to the El Paso Court of Appeals holding in *Bergholtz v. Southwestern Bell Yellow Pages, Inc.*[57]  PSI's reliance on the *Bergholtz* opinion is misplaced because the Bergholtz Court held that the limitation of liability provision at issue in that case did not have to be conspicuous because it "merely shifts damages resulting from a breach of contract."[58]  However, the *Bergholz* court recognized the Texas Supreme Court's holding in *Green International, Inc v. Solis*[59] that a limitation of liability clause "in which one party exculpates itself from its own future negligence" must be conspicuous.[60]  In other words, under Texas law, contractual provisions where a party exculpates itself from its future negligence must be conspicuous regardless of whether the provision is couched as a release, indemnity or, as in the present case, a limitation of liability.[61] Accordingly, the limitation of liability clause that PSI relies on in the First Proposal and the

---

[56] *See Celotex Corp.,* 477 U.S. at 325.

[57] 324 S.W.3d 195, 199 (Tex. App.—El Paso 2010, no pet.).  PSI also cites to the *Green International, Inc. v. Solis*, 951 S.W.2d 384 (Tex. 1997) as support for its argument, but as discussed above PSI's reliance on *Green* is also misplaced.

[58] *Bergholtz,* 324 S.W.3d at 199.

[59] 951 S.W.2d 348, 387 (Tex. 1997).

[60] *Bergholtz,* 324 S.W.3d at 199 (discussing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508-11 (Tex. 1993)).

[61] *Green Int'l,* 951 S.W.3d at 386-387.

December Proposal is the exact type of provision that the Texas Supreme Court has held must be conspicuous because PSI is attempting exculpate itself from future negligence.[62]

The Texas Supreme Court in *Dresser Industries, Inc. v. Page Petroleum, Inc.* adopted the definition of "conspicuous" as set forth in section 1.201(b)(10) of the Texas Business and Commerce Code for clauses that attempt to exculpate a party from their future negligence:

> Conspicuous, with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following: (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.[63]

The determination of whether a limitation of liability is conspicuous is a question of law for the court.[64] The test for the court is "whether attention can reasonably be expected to be called to [the provision]."[65]

Since the context of the contract plays a role in the court's analysis of whether the limitation of liability clause is conspicuous, PSI's clause is set forth below with some of the surrounding text from the First Proposal:[66]

---

[62] PSI's Motion contains a section where PSI appears to assert that Plaintiff's negligence claim is barred by the economic loss doctrine. *See* PSI's Motion pgs. 4-6. Since PSI did not move for summary judgment on the economic loss rule, Plaintiff has not addressed the argument in depth in this response. Further, PSI's arguments on this issue are inapplicable to the current facts because the damages caused by PSI in this case go beyond the object of PSI's contractual agreement with Tippmann. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011) (recovery for economic losses allowed for both contract and tort).

[63] 853 S.W.2d 505, 509-10 (Tex. 1993).

[64] *Dresser Indus., Inc.*, 853 S.W.2d at 510.

[65] *Littlefield v. Schaefer*, 955 S.W.2d 272, 275 (Tex.1997).

[66] PSI's App. 11, 25. Plaintiff recognizes that normally a block quote would be indented but in an effort to include these provisions in a layout similar to how they appear in the PSI Proposals, Plaintiff has expanded the margins of this particular quote.

**7. <u>SAMPLE DISPOSAL</u>**: Unless otherwise agreed in writing, test specimens or samples will be disposed immediately upon completion of the test. All drilling samples or specimens will be disposed sixty (60) days after submission of PSI's report.

**8. <u>PAYMENT</u>**: Client shall be invoiced once each month for work performed during the preceding period. Client agrees to pay each invoice within thirty (30) days of its receipt Client further agrees to pay interest on all amounts invoiced and not paid or objected to for valid cause in writing within said thirty (30) day period at the rate of eighteen (18) percent per annum (or the maximum interest rate permitted under applicable law), until paid. Client agrees to pay PSI's cost of collection of all amounts due and unpaid after sixty (60) days, including court costs and reasonable attorney's fees. PSI shall not be bound by any provision or agreement requiring or providing for arbitration of disputes or controversies arising out of this agreement, any provision wherein PSI waives any rights to a mechanics' lien, or any provision conditioning PSI's right to receive payment for its work upon payment to Client by any third party. These General Conditions are notice, where required, that PSI shall file a lien whenever necessary to collect past due amounts. Failure to make payment within 30 days of invoice shall constitute a release of PSI from any and all claims which Client may have, whether in tort, contract or otherwise, and whether known or unknown at the time.

**9. <u>WARRANTY</u>**: PSI'S SERVICES WILL BE PERFORMED, ITS FINDINGS OBTAINED AND ITS REPORTS PREPARED IN ACCORDANCE WITH ITS PROPOSAL, CLIENT'S ACCEPTANCE THEREOF, THESE GENERAL CONDITIONS, AND WITH GENERALLY ACCEPTED PRINCIPLES AND PRACTICES. IN PERFORMING ITS PROFESSIONAL SERVICES, PSI WILL USE THAT DEGREE OF CARE AND SKILL ORDINARILY EXERCISED UNDER SIMILAR CIRCUMSTANCES BY MEMBERS OF ITS PROFESSION. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED. STATEMENTS MADE IN PSI REPORTS ARE OPINIONS BASED UPON ENGINEERING JUDGMENT AND ARE'NOT TO BE CONSTRUED AS REPRESENTATIONS OF FACT.

SHOULD PSI OR ANY OF ITS PROFESSIONAL EMPLOYEES BE FOUND TO HAVE BEEN NEGLIGENT IN THE PERFORMANCE OF ITS WORK, OR TO HAVE MADE AND BREACHED ANY EXPRESS OR IMPLIED WARRANTY, REPRESENTATION OR CONTRACT, CLIENT, ALL PARTIES CLAIMING THROUGH CLIENT AND ALL PARTIES CLAIMING TO HAVE IN ANY WAY RELIED UPON PSI'S WORK AGREE THAT THE MAXIMUM AGGREGATE AMOUNT OFTHE LIABILITY OF PSI, ITS OFFICERS, EMPLOYEES AND AGENTS SHALL BE LIMITED TO $25,000.00 OR THE TOTAL AMOUNT OF THE FEE PAID TO PSI FOR ITS WORK PERFORMED WITH RESPECT TO THE PROJECT, WHICHEVER AMOUNT IS GREATER.

IN THE EVENT CLIENT IS UNWILLING OR UNABLE TO LIMIT PSI'S LIABILITY IN ACCORDANCE WITH THE PROVISIONS SET FORTH IN THIS PARAGRAPH, CLIENT MAY. UPON WRITTEN REQUEST OF CLIENT RECEIVED WITHIN FIVE DAYS OF CLIENT'S ACCEPTANCE HEREOF, INCREASE THE LIMIT OF PSI'S LIABILITY TO $25,000.00 OR THE AMOUNT OF PSI'S FEE, WHICHEVER IS THE GREATER, BY AGREEING TO PAY PSI A SUM EQUIVALENT TO AN ADDITIONAL AMOUNT OF 5% OF THE TOTAL FEE TO BE CHARGED FOR PSI'S SERVICES. THIS CHARGE IS NOT TO BE CONSTRUED AS BEING A CHARGE FOR INSURANCE OF ANY TYPE, BUT IS INCREASED CONSIDERATION FOR THE GREATER LIABILITY INVOLVED. IN ANY EVENT, ATTORNEY'S FEES EXPENDED BY PSI IN CONNECTION WITH ANY CLAIM SHALL REDUCE THE AMOUNT AVAILABLE, AND ONLY ONE SUCH AMOUNT WILL APPLY TO ANY PROJECT.

NO ACTION OR CLAIM, WHETHER IN TORT, CONTRACT. OR OTHERWISE, MAY BE BROUGHT AGAINST PSI, ARISING FROM OR RELATED TO PSI'S WORK, MORE THAN TWO YEARS AFTER THE CESSATION OF PSI'S WORK HEREUNDER, REGARDLESS OF THE DATE OF DISCOVERY OF SUCH CLAIM.

**10. <u>INDEMNITY</u>**: Subject to the foregoing limitations, PSI agrees to indemnify and hold Client harmless from and against any and all claims, suits, costs and expenses including reasonable attorneys' fees and court costs arising out of PSI's negligence to the extent of PSI's negligence. Client shall provide the same protection to the extent of its negligence. In the event that Client or Client's principal shall bring any suit, cause of action, claim or counterclaim against PSI, the party initiating such action shall pay to PSI the costs and expenses incurred by PSI to investigate, answer and defend it, including reasonable attorney's and witness fees and court costs to the extent that PSI shall prevail in such suit.

**11. <u>TERMINATION</u>**: This Agreement may be terminated by either party upon seven days' prior written notice. In the event of termination, PSI shall be compensated by Client for all services performed up to and including tile termination date, including reimbursable expenses, and for the completion of such services and records as are necessary to place PSI's files in order and/or protect its professional reputation.

PSI argues that a reader's attention is drawn to the limitation of liability clause because it has a heading that is in capitalized, bold and underlined font, and because the text of the clause is capitalized.[67] PSI ignores the fact that every heading is in capitalized, bold and underlined font, and that the limitation of liability is buried within the provision titled "**<u>WARRANTY</u>**." Further, the limitation of liability provision is merely one of four capitalized paragraphs contained within

---

[67] Actually, the General Conditions attached to the First Proposal are the only version of the document with underlined headings. *See* PSI's App. 11.

the "**WARRANTY**" provision.[68]  There is nothing about the limitation of liability portion of the "**WARRANTY**" provision that would call a reader's attention to the fact that a portion of the paragraph limits PSI's liability for its future negligence.  If PSI wanted the clause to be conspicuous, it could have included the language in a capitalized and bold font, in the next paragraph titled "INDEMNITY" since that paragraph addresses PSI's liability for its negligent acts.  Instead, PSI included it in the "Warranty" portion and attempted to make it blend into the warranty language.

Throughout its briefing, PSI attempts to shoehorn the facts of this case into the facts of *Mickens v. Longhorn DFW Moving Inc.*,[69] because PSI argues that the *Mickens* case is similar to the dispute between Tippmann and PSI.[70]  However, the current case and the *Mickens* case are inapposite because of the manner in which the clauses are set forth in the documents.  In *Mickens*, the page containing the limitation of liability clause only contained nine paragraphs and *each paragraph was shorter than three lines*.  The limitation of liability clause was one of only two of those short paragraphs that were capitalized and the clause was less than an inch above the signature line.[71]

PSI's General Conditions page, however, contains fifteen (15) paragraphs on one page, and the limitation of liability provision is in the middle of the longest paragraph in the document, which appears from its heading to simply be a warranty paragraph.[72]  In addition, there is no signature line on the General Conditions page; rather, it is attached as an additional terms and

---

[68] In its brief, PSI defines the limitation of liability clause as the "Clause" and argues that "*The Clause is the only [provision] written in all capital letters. . . .*" *See* PSI's Motion pg. 9 (emphasis in Motion).  PSI goes on to state that the Clause is set off from surrounding text because it is specifically numbered and headed.  PSI's statements would be more accurate if PSI acknowledged that the "Clause" was only a portion of the language in the WARRANTY provision, that the "Clause" was not the only capitalized language in the provision, and that the "Clause" did not have its own heading signifying that it was a limitation of liability clause.

[69] 264 S.W.3d 875 (Tex. App.—Dallas 2008, pet. denied).

[70] *See* PSI's Motion pgs 5-6, 8-9.

[71] *Mickens*, 264 S.W.3d at 879.

[72] PSI's App. 11, 24.

conditions page after the signature line in PSI's Proposal.[73]  Consequently, PSI's reliance on the court's analysis in *Mickens* is misplaced.

The summary judgment evidence establishes that, as a matter of law, the limitation of liability provision in PSI's General Conditions does not meet the test for conspicuousness, which renders the clause unenforceable.  Accordingly, PSI's Motion should be denied.

**C.**     **IF THE COURT OVERRULES PLAINTIFF'S OBJECTIONS TO PSI'S SUMMARY JUDGMENT EVIDENCE AND DETERMINES THE LIMITATION OF LIABILITY CLAUSE IS CONSPICUOUS, THEN GENUINE ISSUES OF MATERIAL FACT EXIST THAT DEFEAT PSI'S MOTION.**

   **1.**     **The Purchase Orders and Subcontract Agreement issued by Tippmann raise a fact issue regarding whether the terms of the PSI Proposals were part of the parties' contract.**

PSI alleges that it entered into three separate subcontracts with Tippmann that are contained in the First Proposal, the Second Proposal, and the December Proposal (collectively the "Proposals").[74]  PSI further alleges that because each of these documents governs the relationship between PSI and Tippmann, the limitation of liability provision allegedly contained in the Proposals limits the total liability of PSI for any damages or defects at the Project to $25,000.[75]  PSI's summary judgment arguments are based entirely on the Proposals.  PSI provided the Court with a copy of Tippmann's Purchase Orders but fails to address them in PSI's summary judgment briefing.  Likewise, PSI ignores the existence of the PSI Subcontract Agreement that PSI signed after the First and Second Proposals were issued, and fails to bring the PSI Subcontract Agreement to the Court's attention in its summary judgment evidence and briefing.  PSI seems to take the approach that if it ignores the Purchase Orders and the PSI Subcontract Agreement, then PSI can avoid addressing the fact issues raised by these documents.

---

[73] PSI's App. 11, 24.
[74] *See* PSI's Brief pg. 3 ¶¶ 1, 2, 3 & 4.
[75] *See* PSI's Brief pgs. 2, 3 ¶ 7 & 9.  Despite the fact that PSI alleges that there were three separate subcontracts, PSI fails to address whether the alleged limitation of liability applied on a contract by contract basis.

The summary judgment evidence establishes that several different documents were exchanged between Tippmann and PSI related to PSI's services on the Project, and that Tippmann intended for the PSI Subcontract Agreement and the Purchase Orders to govern the parties' relationship.[76] Since fact issues exist regarding the exact documents and terms that governed the parties' relationship, PSI's Motion should be denied.

2.     **Even if the First and Second PSI Proposals constitute contracts, under the merger doctrine the terms of those proposals were merged into the PSI Subcontract Agreement and Purchase Orders.**

In Texas, the "merger doctrine" provides that prior or contemporaneous agreements between the same parties and concerning the same subject matter are absorbed into any subsequent agreement.[77] Under the merger doctrine, whether the parties intend for one contract executed in a series of contracts to become the sole agreement presents a question of fact.[78] Moreover, evidence of the parties' intent is required to determine whether a later agreement is intended to take the place of a previous agreement through merger, or whether the later agreement is simply a supplement to the original agreement.[79]

Here, Tippmann signed PSI's First Proposal and then almost immediately requested that PSI provide additional services on the Project.[80] As a result, PSI submitted the Second Proposal to Tippmann.[81] After PSI issued its First and Second Proposals, Tippmann issued the PSI Subcontract Agreement and then, one-day later, issued the Purchase Orders accepting the First

---

[76] Budzon Aff. ¶ 3 at App. 048;  Willson Aff. ¶ 3 at App. 078; Halberstadt  Aff. ¶ 8 at App. 003.
[77] *See e.g., Texas A & M Univ.-Kingsville v. Lawson*, 127 S.W.3d 866, 872 (Tex. App.—Austin 2004, pet. denied) (explaining the merger doctrine); *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898-99 (Tex. App.—Fort Worth 1997, writ denied).
[78] *Satre v. Dommert*, 184 S.W.3d 893, 899 (Tex.App.—Beaumont 2006, no pet.).
[79] *See Carr v. Weiss,* 984 S.W.2d 753, 764 (Tex. App.—Amarillo 1999, pet. denied).
[80] Willson Aff. ¶¶ 3 & 4 at App. 078.
[81] Willson Aff.  ¶ 4 at App. 078; *see also* PSI App. 14-16.

and Second Proposals.[82]   PSI signed the PSI Subcontract Agreement and returned it to

Tippmann.[83]   Under the merger doctrine, the First and Second Proposals were absorbed into the

PSI Subcontract Agreement and Purchase Orders because the First and Second Proposals

predated the PSI Subcontract Agreement and Purchase Orders.[84]   Accordingly, any limitation of

liability clause contained in the First Proposal or Second Proposal would have been merged into

the PSI Subcontract Agreement.

Determining whether the First and Second Proposals were merged into the PSI

Subcontract Agreement or whether the parties intended for the First and Second Proposals to be

the controlling agreement(s) will require evidence of the parties' intent.[85]   Plaintiff's summary

judgment evidence establishes that Tippmann always intended for the PSI Subcontract

Agreement and Purchase Orders to control the terms and conditions of the relationship between

PSI and Tippmann.[86]   Consequently, a genuine issue of material fact exists as to the applicability

of the limitation of liability clause contained in the First and Second Proposals, and PSI's Motion

should be denied.

PSI may argue that if the First and Second Proposals were merged into the PSI

Subcontract Agreement, then the PSI Subcontract Agreement was later merged into the PSI's

December Proposal.   Since Plaintiff's summary judgment evidence establishes that Tippmann

always intended for the PSI Subcontract Agreement and Purchase Orders to control the terms

---

[82] Halberstadt ¶ 9 and Exs. 2 & 5 at App. 003-004, 029-036, 045-046; Budzon Aff. ¶ 5 and Exs. 1 & 2 at App. 048-04, 050-063.

[83] Halberstadt ¶ 9 and Exs. 3 & 4 at App. 003-004, 038- 040, 042-043; Budzon ¶ 5 and Ex. 1 at App. 048-04, 050-060.

[84] *See Texas A &* Plaintiff's summary judgment evidence establishes that Tippmann always intended for the PSI Subcontract Agreement and Purchase Orders to control the terms and conditions of the relationship between PSI and Tippmann.[84]*M Univ.-Kingsville*, 127 S.W.3d at 872.

[85] *See Carr,* 984 S.W.2d at 764.

[86] Halberstadt Aff. ¶¶ 8 & 9 and Exs. 2 & 5 at App. 003-004, 029-036, 045-046; Budzon Aff. ¶ 3 and Exs. 1 & 2 at App. 048, 50-63; Willson Aff. ¶¶ 3 & 4 at App. 078.

and conditions of the relationship between PSI and Tippmann,[87] then fact issues would exist regarding whether the December Proposal was an amendment to (and in addition to) the terms of the PSI Subcontract or a merger. This is especially true in light of the evidentiary issues and fact issues raised by the incomplete copy of the December Proposal included in PSI's summary judgment evidence.

### 3. Issues of fact surrounding the December Proposal require that PSI's Motion be denied.

PSI may argue that even if the PSI Subcontract Agreement and Purchase Orders govern the parties' relationship, PSI's December Proposal changed the terms once again. As discussed earlier, Plaintiff does not believe the December Proposal that PSI provided to the Court is admissible. However, if the Court determines that the December Proposal is admissible, several fact issues exist related to that proposal.

On its face, the December Proposal included in PSI's Appendix appears to be a compilation of three separate documents and not a full copy of PSI's alleged proposal. There is a header on most of the documents in the December Proposal that identifies PSI's proposal number and indicates that the proposal includes nine pages.[88] Page seven, which is the signature page of the December Proposal, contains a header similar to the first six pages that identifies the document as "Page 7 of 9", but this page also contains a facsimile legend showing that: (i) PSI faxed the page to Tippmann as page 1 of a fax; (ii) Tippmann faxed the page as page 1 of a fax; and (iii) then PSI faxed the document again to an unknown recipient.[89] No facsimile legend appears on the first six pages of the December Proposal, and PSI has provided no testimony or

---

[87] Halberstadt Aff. ¶¶ 8 & 9 and Exs. 2 & 5 at App. 003-004, 029-036, 045-046; Budzon Aff. ¶ 3 and Exs. 1 & 2 at App. 048, 50-63; Willson Aff. ¶¶ 3 & 4 at App. 078.
[88] PSI's App. 18-24.
[89] PSI's App. 25.

evidence that those pages were actually sent to Tippmann.[90]  Since Tippmann has no record of the December Proposal in its Project files and PSI has no evidence that pages 1-6 or 8-9 of the December Proposal were sent Tippmann, a fact issue exists over whether Tippmann ever saw the terms of the December Proposal.[91]

Also, the last page of the December Proposal, which contains the General Conditions upon which PSI primarily relies on its Motion, does not contain a header identifying it as being part of PSI's December 2008 Proposal.[92]  The bottom line is that, at best, PSI has only provided a copy of seven pages of a nine page proposal.  There is no limitation of liability provision in the seven pages that PSI provided so PSI adds a page of General Conditions and pretends that the one page document is really pages eight and nine of the December Proposal.  There is no evidence, however, that the terms in the one page of General Conditions page that PSI attached to the December Proposal for in its Motion are the same terms that were included in the two pages that are missing from the December Proposal.

Accordingly, fact issues exist over whether: (i) eight of the nine pages of the December Proposal were even sent to Tippmann, and (ii) the terms that PSI relies upon were part of the December Proposal.  Because of these fact issues, PSI's Motion should be denied.

**D.  EVEN IF THE COURT DETERMINES THAT THE LIMITATION OF LIABILITY PROVISION IN PSI's PROPOSALS IS ENFORCEABLE, THERE IS A FACT ISSUE RELATED TO THE AMOUNT OF PSI's LIABILITY UNDER THE PROVISION.**

If the Court concludes that the limitation of liability provisions in PSI's Proposals are enforceable, PSI's Motion should still be denied because PSI has failed to establish the amount of its liability under those provisions.  The limitation of liability provision that PSI relies on

---

[90] PSI's App. 18-24.
[91] Halberstadt Aff. ¶ 7 at App. 002; Budzon Aff. ¶ 7 at App. 049.
[92] PSI's App. 25.  Also, the version of the General Conditions attached to the December Proposal differs from the version attached to the First Proposal because the paragraph headings in the version attached to the December Proposal are not underlined.  *See* PSI's App. 11, 25.

limits PSI's liability to the greater of: $25,000 or the amount of PSI's fee.[93]  PSI argues in its brief that PSI entered into three "subcontracts" for fees of $25,000, $5,200, and $2,400 respectively.[94]  This means that PSI's liability would be at least $32,600, and could well exceed that amount if the $25,000 limit was on a subcontract by subcontract basis.  Since PSI failed to establish how damages would be calculated if the limitation of liability provisions are determined to be enforceable, PSI's Motion should be denied.

## VIII.   PRAYER

For the reasons set forth in this brief, Plaintiff respectfully requests that the Court enter an order denying PSI's Motion for Partial Summary Judgment.

---

[93] PSI's Motion pgs. 3-4;  PSI's App. 11, 25.
[94] PSI's Motion pg. 3.